# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:04CV579-3-MU

| | |
|---|---|
| WILLIAM T. YOUNG, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| SUPERINTENDENT JOHN L. CROW ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court upon Petitioner William T. Young's (hereinafter "Petitioner") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Document No. 1), the State's Motion for Summary Judgment (Document No. 5), and Petitioner's opposition to the State's Motion for Summary Judgment (Document No. 7.) For the reasons stated below, Petitioner's Petitioner will be DENIED and DISMISSED.

## I. Procedural Background

On September 29, 2003, Petitioner pled guilty to (1) involuntary manslaughter; (2) failure to stop for a steady red light; (3) misdemeanor larceny; and (4) felonious speeding to elude arrest. Pursuant to the plea agreement, Petitioner was sentenced to a consolidated term of 49-59 months for the first three offenses and a consecutive term of 25-30 months imprisonment for the fourth offense. Petitioner did not file an appeal. Instead, Petitioner dated a pro se certiorari petition March 4, 2004 which was filed in the North Carolina Court of Appeals on March 16, 2004. Certiorari was denied on March 25, 2004. Petitioner then dated a pro se motion for appropriate relief ("MAR") August 24,

1

2004 which was filed in the Superior Court of Mecklenburg County. The Honorable Robert P. Johnston summarily denied Petitioner's MAR on September 21, 2004 finding that Petitioner "fail[ed] to state a claim upon which relief can be granted." Petitioner then dated a pro se certiorari petition August 30, 2004 and filed it with the North Carolina Court of Appeals on October 4, 2004, seeking review of the denial of his MAR. Certiorari was denied on October 14, 2004. Petitioner filed the instant motion on November 23, 2004.

By the instant habeas petition, Petitioner contends that; (a) the sentencing judge made negative and personal statements during the guilty plea proceeding; (b) the prosecutor committed perjury; (c) Petitioner received ineffective assistance of counsel and (d) aggravating factors were used at sentencing that should not have been considered.

## II. Standard of Review

Generally speaking, the standard of review to be applied by the Court to habeas cases is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication; (1) "resulted in a decision that was contrary to, or involved as unreasonable application of, clearly established Federal laws, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . ."

Id. (Internal citations omitted).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the

2

Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

Finally, the applicable standard of review is to be applied to "all claims 'adjudicated on the merits," that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.2d 445, 455 (4th Cir. 1999).

### III. Analysis

**A. The Judges' Statements During the Guilty Plea Proceeding Were Not Inappropriate**

Petitioner claims that the Judge Bridges made derogatory, negative and personal statements about him during the sentencing hearing. Specifically, Petitioner claims that Judge Bridges refused to use the word "accident" to describe Petitioner's crime because to him Petitioner's act was a "hideous act of violence - a monstrasity (sic) etc..." (Petition at 7.) According to Petitioner, Judge Bridges also stated that he hoped the Department of Corrections never did anything for Petitioner. (Id.) Judge Bridges also asked the family of the victim if they disagreed with the plea. According to Petitioner, this clearly showed the judge's bias against Petitioner. (Id.)

First, the Court has read the entire transcript of Petitioner's sentencing hearing and notes that Judge Bridges made no inappropriate comments toward Petitioner. Moreover, Petitioner does not include any citations to the sentencing transcript that support his argument that Judge Bridges made

3

inappropriate comments. Petitioner's claim as it relates to Judge Bridges is unsupported by the record and in any event does not amount to improper commentary or bias on the part of Judge Bridges. Liteky v. United States, 510 U.S. 540, 555 (1994) ("opinion formed by the judge on the basis of facts introduced or events occurring the course of . . . prior proceedings, do not constitute bias for a bias or partiality motion unless they display a deep-seated favoritism or antagonism, that would make fair judgment impossible."). See also, Gaskins v. McKellar, 916 F.2d 941, 946-49 (4th Cir. 1991) (on review of state proceedings, question is whether trial judge's involvement rendered trial fundamentally unfair), cert. denied, 500 U.S. 961 (1991) and Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("in order to obtain an evidentiary hearing on an ineffective assistance of counsel claim - or for that matter, on any claim - a habeas petition must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegation do not entitle a habeas petitioner to an evidentiary hearing."), cert. denied, 507 U.S. 923 (1993).

Having reviewed the entire sentencing transcript the Court can only conclude that Petitioner was offended by Judge Bridge's remark that the victim lost his life as a result of this "tragedy." The Court then stated "I'm not going to use the word accident but this tragic occurrence is certainly something that never should have happened, let alone it never should have resulted in the loss of life for any individual." (Sentencing Transcript at 28.) Further Petitioner contends that the Judge made some reference to the Department of Correction doing nothing for Petitioner. Again, the Court assumes that Petitioner is referring to Judge Bridges' ruling that he was not going to recommend work release and that to the extent the Department of Corrections grants work release, it would be granted against the recommendation that Judge Bridges made to the Department of Corrections. (Id.)

Next, Petitioner refers to the Court asking the victim's family if they disagreed with the plea.

4

Somehow, Petitioner believes that this question points to bias by Judge Bridges. In reviewing the transcript of sentencing this Court found only one reference to Judge Bridges speaking to the victim's family about the plea. The Court stated "[t]hat was my next question. That was in particular whether or not any family member wished to speak on the punishment that is being or is to be imposed in this case. Does anyone from the victim's family have anything to say in that regard?" (Transcript at 19.) No one from the victim's family spoke at that time. This Court is not troubled by Judge Bridges asking the victim's family if they had anything to say regarding the sentence in this case. The Court knows that to be the normal practice in the state court when the criminal conduct has a direct impact on a victim and their family. Not only is it the normal practice in the state court, it is not in violation of any state or federal law for the court to do so.

Lastly, Petitioner stated that Judge Bridges referred to Petitioner's crime as a hideous act of violence. This Court could find not such statement nor anything close to that statement in the sentencing transcript. The Court finds that Judge Bridges' comments during sentencing were entirely appropriate and professional.

Even assuming that some of Judge Bridges comments were improper, they could not have rendered Petitioner's guilty plea proceeding fundamentally unfair, warranting habeas relief because Petitioner received the exact sentence as negotiated in his plea agreement. Furthermore, by Petitioner's own admission, Judge Bridges twice gave Petitioner the opportunity to "come off" his plea, but Petitioner declined to do so. (Petition at 7.)

Next, Petitioner raised the substance of this argument in his MAR. Judge Johnston summarily denied Petitioner's MAR on the merits by stating that Petitioner's MAR "fails to state a claim upon which relief can be granted." Despite the summary nature of Judge Johnston's order, it is an implicit

5

adjudication of the substance of Petitioner's current claim on its merits. Bell v. Jarvis, 236 F.3d 149, 176 (4th Cir. 2000) (en banc) (dissenting opinion pointing out that both the majority of the en banc panel and the dissenters agree that a perfunctory state court order by a North Carolina Superior Court judge denying an MAR solely on the ground that the MAR "fails to state a claim upon which relief can be granted" without any citation to authority, is an adjudication on the merits for purposes of 28 U.S.C. § 2254(d)(1)), cert. denied, 534 U.S. 830 (2001). Judge Johnston's summary MAR order is correct. It did not result in a decision contrary to, or involve an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States (i.e. Liteky). Nor was Judge Johnston's summary MAR order based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. Therefore, Judge Johnson's summary adjudication and denial of Petitioner's claim on its merits, is a correct and reasonable application of the law. It is not contrary to Liteky and it is not an unreasonable application of Liteky to the facts of this case.

Petitioner's claim regarding the sentencing judge's alleged negative and personal statement is denied as this Court finds that the claim has no merit. The claim is additionally denied pursuant to § 2254(d) and (e). See Williams v. Taylor, 529 U.S. 362, 409-412 (2000).

**B. There is No Evidence That The Prosecutor Committed Perjury**

As his next claim, Petitioner alleges that the prosecutor committed perjury because she told the judge that the reason the state could not go to trial was that the state was not able to prove the Petitioner was impaired. Petitioner claims specifically that the assistant district attorney told the court that the Petitioner was impaired, when he was not and that the Petitioner was on probation, when he was not. Finally, the Petitioner argues that the assistant district attorney and his lawyer changed the

6

plea agreement after Petitioner signed it.

Again, Petitioner's allegations are conclusory and unsupported by the record. The record reveals that the Court questioned the assistant district attorney as to why Petitioner was permitted to plead to involuntary manslaughter when the original charge was second-degree murder. As part of her response, she explained to the Court that because Petitioner was taken to the hospital after the accident, there was no opportunity for sobriety tests in the field or otherwise. (Sentencing Transcript at 19.) However, she also mentioned that Petitioner, by his own admission, stated he was high on cocaine on the night of the accident (Sentencing Transcript at 16, 20.)

With respect to the district attorney's statement regarding Petitioner's probation status, the Court, when considering Petitioner's prior criminal history, asked the attorney for the state whether Petitioner was on probation. The assistant district attorney responded that she believed so. (Sentencing Transcript at 24.) Petitioner argues that the alleged incorrect statement regarding his probation status was used to aggravate his sentence. This argument is completely inaccurate. According to the record, Petitioner received the exact sentence he bargained for in his plea agreement. Moreover, according to the aggravating and mitigating factor sheets, only one aggravating factor was found, i.e., "The defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person."

The Court has reviewed the entire sentencing transcript and has found no evidence of perjury by the assistant district attorney. Petitioner's contention that the assistant district attorney committed perjury is completely without merit and therefore is dismissed. Moreover, Petitioner raised the substance of this claim in his MAR. Judge Johnston's summary MAR order should not be overturned on federal habeas review under the deferential standards of review contained in § 2254(d) and (e).

See Early v. Packer, 537 U.S. 3, 8 (2003) (state court need not cite or even be aware of United States Supreme Court case in order to obtain deferential standards of review) and Bell v. Jarvis, 236 F.3d 149.

**C. Petitioner Did Not Receive Ineffective Assistance of Counsel**

Petitioner contends that his attorney was ineffective by allowing his plea to be changed after his signature; refusing to provide Petitioner with paperwork regarding the hearing; allowing the state to use false facts during sentencing; forcing Petitioner to plead to misdemeanor larceny when the charge had been dismissed; lying to Petitioner about what he would receive in the plea bargain and forcing Petitioner to sign a plea that he knew was going to be changed.

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. Of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing, Strickland, 466 U.S. at 697.

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief

8

solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993).

Petitioner has not established that his counsel was ineffective. His allegations are unsupported and conclusory. First, Petitioner's assertion that his attorney allowed his plea to be changed after his signature is belied by Petitioner's own comments during the sentencing hearing. After the judge explained the charges to which Petitioner was pleading, he asked Petitioner "[i]s that correct as being your understanding?" Petitioner responded "yes." The Court then asked "[i]s that now consistent with what you understood previously? Again, Petitioner responded "yes." The Court then asked "[d]o you now accept that arrangement?" Once again, Petitioner responded "yes." The Court then asked Petitioner is he had any questions. Petitioner responded by saying that he did and told the judge that " . . . there is a few things that changed this morning. It's not going to change me from pleading guilty to these charges. But a couple of things happened this morning that I wasn't quite aware as far as the red light and even though I understand that it won't change anything as far as the plea itself or the numbers wouldn't change anything but since the State changed a few things I was going to ask the Judge would he consider running it concurrent because these things at first weren't made aware to me. I'm not going to change my plea. I'm still going to plead guilty but I would ask the Court to consider that." The Court went on to explain that Petitioner's case had been submitted to the court as a negotiated plea with a negotiated sentence. The judge told Petitioner he could decide not to follow the negotiated sentence but if the court so refused, Petitioner had the opportunity to withdraw

from the plea (Sentencing Transcript at 9-10.).

The above quoted sections of the sentencing transcript make it clear that Petitioner knew some changes had been made to his plea agreement on the morning of sentencing and he freely admitted to the court that even in light of the changes it was his desire to plead guilty. Moreover, Petitioner admitted that Judge Bridges twice gave him an opportunity to "come off" the plea and Petitioner also admitted that he declined to do so. Thus Petitioner's ineffectiveness claim is without merit. Petitioner has failed to establish either prong of the Strickland test.

Next, petitioner argues that his counsel was ineffective for failing to provide Petitioner with a free copy of the paperwork (i.e. the sentencing transcript) from his guilty plea proceeding. Petitioner claims that the "paperwork" expenses should have been included in his lawyer's $5, 525.00 fee. Counsel for Petitioner clearly had no obligation to provide Petitioner with a free transcript at counsel's own expense. However, even if this Court were to assume that counsel were ineffective for failing to provide Petitioner with a copy of the sentencing transcript, Petitioner's claim would still fail as he has failed to establish how failure to provide the transcript prejudiced him.

Next, Petitioner's assertions that defense counsel allowed the state to use false facts at sentencing, forced him to plead to a dismissed charge and lied to him about the plea bargain and coerced the plea are totally without merit. In evaluating post-guilty plea claims of ineffective assistance, statements previously made under oath affirming satisfaction with counsel are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). Moreover, statements made during Rule 11 proceedings constitute strong evidence of the voluntariness of a defendant's plea. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991).

Petitioner must take responsibility for his own words at sentencing. The transcript of plea form and the transcript of the guilty plea proceeding belie any claim of coercion, lying about the plea bargain or forcing him to plead to dismissed charges. In addition to the portion of the plea colloquy quoted above wherein the Court went through the charges to which Petitioner was pleading and made certain that Petitioner understood the plea bargain (sentencing transcript at 9-10), the Court also specifically asked Petitioner "[h]as anyone made any threats or promises to cause you to enter this plea against your wishes?" To which Petitioner responded, "[n]o sir." The Court then asked Petitioner [d]o you plead guilty of your own free will fully understanding what you're doing?" Petitioner responded "yes." (Sentencing transcript at 8.)

The record supports this Court's conclusion that Petitioner's counsel was not ineffective. Petitioner has made vague and conclusory allegations and has not established either prong of the Strickland test. Furthermore, Petitioner raised this argument in his MAR. The Court of Appeals adjudicated and denied the claim, albeit in summary fashion by stating that Petitioner's MAR "fails to state a claim upon which relief can be granted." Despite the summary nature of Judge Johnston's order, it is an implicit adjudication of the substance of Petitioner's current claim on its merits. Bell v. Jarvis, 236 F.3d 149, 176 (4th Cir. 2000). Judge Johnston's summary MAR order is correct. It did not result in a decision contrary to, or involve an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States (i.e. Strickland). Nor was Judge Johnston's summary MAR order based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. Therefore, Judge Johnson's summary adjudication and denial of Petitioner's claim on its merits, is a correct and reasonable application of the law. It is not contrary to Strickland and it is not an unreasonable application of Strickland to the facts of this case.

11

Therefore, Petitioner's ineffective assistance of counsel claims is additionally denied pursuant to § 2254(d) and (e). See Williams v. Taylor, 529 U.S. 362, 409-412 (2000).

### D. Only One Aggravating Factor Was Considered

Petitioner claims that aggravating factors were used at sentencing that should not have been considered. In support of Petitioner's argument, he reasserts most of the allegations raised above.

First, the Court has reviewed the sentencing transcript and the aggravating and mitigating factor sheets and notes that only one aggravating factor was found, i.e., "The defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." Petitioner is simply incorrect that other aggravating factors were found which had an impact on his sentence. Additionally, because the allegations raised in support of this argument were addressed by this Court in the sections above, Petitioner's claim is denied pursuant to 2254(d) and (e).

Included in this last claim, Petitioner also argues that he was entitled to nine months jail credit. Petitioner is correct and the Court notes that he did receive that credit. Petitioner's plea bargain specifically called 90 days of jail credit and Petitioner's judgment and commitment form for voluntary manslaughter shows that he received 90 days jail credit.

In any event, such claim is procedurally barred pursuant to N.C.G.S. § 15A-1419(a)(1)(b) since Petitioner was in an adequate position to have raised such assertion in his MAR but failed to do so (claim shall be denied when defendant was in adequate position to have raised it in prior MAR but did not do so, absent cause and prejudice or fundamental miscarriage of justice, i.e. actual innocence). See also, Rose v. Lee, 252 F.3d 676 (4th Cir.) (North Carolina's post-conviction

procedural bar statute of § 15A-1419 is now mandatory), cert. denied, 534 U.S. 941 (2001). The jail credit claim is therefore procedurally barred from federal habeas review pursuant to Breard v. Pruett, 134 F.3d 615 (4th Cir.) cert. denied, 523 U.S. 371 (1998).[1]

## IV. Order

For the foregoing reasons, it is hereby ordered that the Petitioner's Petition for a Writ of Habeas Corpus is **DENIED AND DISMISSED** and Respondent's Motion for Summary Judgment is **GRANTED.**

**SO ORDERED**.

Signed: September 12, 2006

Graham C. Mullen
United States District Judge

---

[1] Petitioner did raise jail credit or "gap time' in his certiorari petition seeking review of the denial of his MAR. However, raising a claim for the first time in a discretionary petition to state appellate court is insufficient to fairly present that claim to the state courts for purposes of exhaustion and thus avoid the procedural bar. See Castille v. Peoples, 489 U.S. 346 (1989).